UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VALENTINA RIFFEL,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 5:19-cv-08466-EJD<br><br>**ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING**<br><br>Re: Dkt. No. 55 |

This case stems from the "Varsity Blues" college admissions scandal involving William "Rick" Singer and parents of college applicants conspiring to bribe athletic coaches and administrators to get their children admitted to various universities through fraud. Defendant University of Southern California ("USC") has filed a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court took this motion under submission without oral argument pursuant to Civil Local Rule 7-1(b). For reasons stated below, the Court holds that Plaintiff Valentina Riffel ("Riffel") lacks standing to pursue her claims. The Court thus lacks jurisdiction and must **DISMISS** Riffel's claims.

**I.  BACKGROUND**

    **A.  Factual Background**

The Court previously detailed the facts related to the "Varsity Blues" college admissions scandal in *Tamboura v. Singer*; *Bendis v. Singer* ("*Tamboura")*, No. 5:19-cv-03411-EJD, 2020

WL 2793371 (N.D. Cal. May 29, 2020).[1] Therefore, the Court reviews allegations relevant to Riffel's action and USC's motion to dismiss below.

Riffel asserts claims on behalf of herself and all individuals "who paid, or reimbursed the payment of, an admission application fee" to USC. First Amended Complaint ("FAC") ¶ 1, Dkt. No. 27. Riffel claims that through its website, USC represented that it would consider prospective applicants for admission to the university based on their individual merits. *Id*. ¶ 22. Specifically, she focuses on the following statement (the "Representation") found on the admissions page of USC's website:

> "Like many highly selective universities, we conduct a comprehensive, holistic review of your application to consider academic and personal characteristics. We will review your performance in school, the rigor of your program, writing skills and test scores. We also consider personal qualities, as revealed in community involvement, leadership and achievements."

*Id*. According to Riffel, USC made the Representation though its website "with the intent to induce would-be applicants . . . to rely upon the Representation and pay, or reimburse, an application fee in connection with an application for admission to USC." *Id*. ¶ 24. But she contends the Representation was untrue because USC failed to inform prospective applicants that in exchange for payment, USC would designate applicants as student-athlete recruits and "thereby afford them a higher likelihood of admission than applicants who are not designated as student-athlete recruits." *Id*. ¶ 23. Relatedly, Riffel alleges she was not aware that an applicant could pay money to have her application considered under the "more lenient standard." *Id*. ¶ 27. Riffel alleges she relied upon the truth of the Representation and that "but for the Representation" she "would not have paid or reimbursed the payment of[] an application fee." *Id*. ¶¶ 24, 39. Finally, she contends that as a result of their reliance, she along with each member of the putative class

---

[1] Although Riffel's complaint does not reference "Varsity Blues" or the college admissions scandal generally, the Court finds that Riffel's allegations relate directly to William "Rick" Singer's scheme to conspire with the parents of college applicants to bribe officials to have their children admitted to various universities through fraud.

Case No.: 5:19-cv-08466-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

2

1    suffered a loss of property in the form of fees the class members paid or reimbursed in connection

2    with an application for admission to USC.  *See id*. ¶¶ 24, 29.

### B. Procedural Background

On May 29, 2020, the Court dismissed the *Bendis* and *Tamboura* actions after the plaintiffs were unable to plead an adequate cognizable injury-in-fact, and therefore, lacked standing to pursue their claims.  *Tamboura*, 2020 WL 2793371, at *4.  Following the dismissal, the Court held a status conference to see how Riffel and USC wanted to proceed in light of the Court's ruling. After the parties were unable to reach a resolution, USC filed a motion to dismiss Riffel's First Amended Complaint for lack of standing.  ("Mot."), Dkt. No. 55.  In response, Riffel filed an opposition to the motion to dismiss ("Opp'n"), *see* Dkt. No. 58, to which USC filed a reply ("Reply iso Mot.").  *See* Dkt. No. 59.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder. *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").  Hence, an Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.  *In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1092 (N.D. Cal. 2013).

To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).  To

Case No.: 5:19-cv-08466-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

3

establish an injury-in-fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quotation marks and citation omitted). To establish a traceable injury, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation marks and citation omitted) (alteration omitted). It must also be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." *Id*. at 561 (quotation marks and citation omitted). And if a plaintiff is seeking injunctive or declaratory relief, the plaintiff must demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

If a plaintiff cannot allege Article III standing, then the federal court lacks jurisdiction over the case and must dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1). *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003); S*teel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 109-10 (1998). Indeed, "[a]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *In re Apple Processor Litig.*, 366 F. Supp. 3d 1103, 1107 (N.D. Cal. 2019) (quoting *Spokeo*, 136 S. Ct. at 1547). "When '[s]peculative inferences' are necessary . . . to establish either injury or the connection between the alleged injury and the act challenged, standing will not be found." *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988) (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 45 (1976)).

### III. REQUEST FOR JUDICIAL NOTICE

Under Federal Rule of Evidence 201, the Court may take judicial notice of facts that are not subject to reasonable dispute because they are either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Although the Court may take judicial notice of the existence of court documents, the Court may not take judicial notice of disputed facts within those records. *Lee v. City of Los*

Case No.: 5:19-cv-08466-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

4

*Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) ("[W]hen a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'") (citation omitted). Further, the Court may deny a request to judicially notice facts which are not relevant to the disposition of the issues before the Court. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n. 13 (9th Cir. 1998).

Without opposition from Plaintiff, USC requests judicial notice over three exhibits: (A) this Court's order dismissing amended complaints for lack of standing in related actions *Bendis, et al. v. Singer, et al.*, Case No. 5:19-cv-01405-EJD and *Tamboura et al. v. Singer et al.*, Case No. 5:19-cv-03411, (B) the operative complaint in *Bendis, et al. v. Singer, et al.*, Case No. 5:19-cv-01405-EJD, and (C) the plea agreement in *United States v. William Rick Singer*, Case No. 19-cr-10078 (Dkt. No. 2), filed in the United States District Court for the District of Massachusetts on March 5, 2019. Request for Judicial Notice ("RJN"), Exs. A-C, Dkt. No. 56. The Court will GRANT USC's request for judicial notice. In the case of Exhibits B and C, both are judicially noticeable because the Court may take judicial notice of "court filings and other matters of public record." *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006). A court may also take judicial notice of its own records in other cases. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Accordingly, the Court will also take judicial notice of Exhibit A.

**IV.  DISCUSSION**

USC contends that Riffel's alleged harm is identical to the economic loss harm plead in *Tamboura* and *Bendis*, which the Court found was insufficient to establish Article III standing. In *Tamboura* and *Bendis*, the argument raised by the plaintiffs was compared to a "bargain-for-exchange" scenario. *Tamboura*, 2020 WL 2793371, at * 3. The plaintiffs stated that when students applied for admission to the defendant universities, they applied based on the universities' alleged misrepresentations and omissions about the equity of their merits-based

Case No.: 5:19-cv-08466-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

5

admissions process. They argued that the admissions process was neither fair nor objective because of the universities' involvement in the college admissions scandal. The plaintiffs also believed they had suffered the economic harm of not receiving what they agreed to pay for. *Id*. Despite the parallels, Riffel does not attempt to differentiate her alleged harm from the economic harm at issue in *Tamboura* and *Bendis*. *See generally* Opp'n. But given the similarities between the actions, the Court finds no reason to conclude that Riffel has plead a concrete, particularized economic injury sufficient to establish Article III standing.

In *Tamboura* and *Bendis,* the alleged economic harm could not form the basis for Article III standing. Like Riffel, the plaintiffs in *Tamboura* and *Bendis* did not allege that they applied for, were being considered for, or were denied an athletic spot. *See Tamboura*, 2020 WL 2793371, at *3. Therefore, they could not show they were "*particularly*" affected by the college admissions scandal. *Id*. (emphasis in original). This Court explained that an injury-in-fact cannot just be based on some morally irreprehensible act. *Id*. (discussing *Allen v. Wright*, 468 U.S. 737, 739-40 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Some link between the bad act and the plaintiff is needed. *Id*. Although the *Bendis* and *Tamboura* plaintiffs argued that they had plead an injury-in-fact because they alleged they would not have applied to the universities had they known about the ongoing fraud, the Court explained that this was "no different than the type of generalized grievance that courts have routinely rejected." *Id*. at *4 (citing *Birdsong v, Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) ("At most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to other unidentified iPod users who might choose to use their iPods in an unsafe manner. The risk of injury the plaintiffs allege is not concrete and particularized as to themselves."); *Lujan*, 504 U.S. at 563–67 (holding that the plaintiffs fear of harm to endangered species, without some showing of particular injury, was insufficient)).

Here, Riffel's alleged economic harm is foundationally no different from the economic harm alleged in *Tamboura* and *Bendis*. Riffel contends that had she been aware that USC had a

Case No.: 5:19-cv-08466-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

6

1    system by which prospective applicants could pay a sum certain of money to receive preferential
2    treatment in USC's admissions process, she would never have applied or paid USC's application
3    fee for admission to the university. Opp'n at 5-7. She argues that she has plead an injury-in-fact
4    because USC, through its "advertising," misled and failed to disclose material information "which
5    in turn caused [Riffel] to rely on the misrepresentation or material omissions which resulted in
6    [Riffel] spending her money and submitting an application for admission." Opp'n at 5-6 (citing
7    *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 847 (N.D. Cal. 2012)). Like the plaintiffs in *Tamboura*
8    and *Bendis*, Riffel does not allege that she sought admission as a student athlete or that the college
9    admissions scandal prevented her application from being evaluated on its merits. Thus, without
10   some link between her application and USC's alleged bad acts, Riffel has simply plead the type of
11   generalized grievance routinely disallowed by courts and already rejected in *Tamboura* and
12   *Bendis*.

13   Riffel's reliance on cases such as *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) and
14   *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x. 359 (9th Cir. 2009) to support her economic
15   harm argument is also misplaced. In each of those cases, unlike in the present matter, the
16   plaintiffs alleged individual economic harm directly created by the defendants' representations
17   that the property at issue had features or value that the property ultimately did not have. And
18   therefore, the plaintiffs did not receive the benefit of their bargain. *See Maya*, 658 F.3d at 1069
19   (explaining that plaintiffs' "claim that, as a result of defendants' actions, they paid more for their
20   homes than the homes were worth at the time of sale," and "claim that they would not have
21   purchased their homes had defendants made the disclosures allegedly required by law" constituted
22   "a quintessential injury-in-fact"); *Chavez*, 340 F. App'x. at 360-61 (finding that plaintiff "lost the
23   purchase price" of the beverage because "he did not know the geographic origin of the products"
24   and consequently "lost money . . . in that he did not receive what he had paid for.").

25   Riffel fails to allege how the college admissions scandal affected her personally or how the
26   alleged misrepresentations and omissions caused her to not receive what she bargained for when

Case No.: 5:19-cv-08466-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

7

she paid her admissions application fee. She has not plausibly alleged that she was "deprived of an agreed-upon benefit" which USC represented but did not deliver. *McGee v. S-L Snacks Nat.*, 982 F.3d 700, 705–06 (9th Cir. 2020) (quoting *Birdsong*, 590 F.3d at 961). Instead, Riffel asserts only the conclusory allegation that she "would not have paid, or reimbursed the payment of, an application fee." FAC ¶ 39. Without more, the Court must reject Riffel's economic harm argument. *See In re Apple Processor Litigation*, 366 F. Supp. 3d at 1110.[2]

In sum, Riffel has failed to establish that she suffered from an injury-in-fact.[3] Because Riffel cannot show a judicially cognizable harm, she lacks standing and the Court therefore **GRANTS** USC's motion to dismiss on jurisdictional grounds.

## V. LEAVE TO AMEND

In determining whether leave to amend is appropriate, the district court considers "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (noting amendments should be granted with "extreme liberality"); Fed. R. Civ. Pro. 15(a)(2) (court should freely allow amendment when "justice so requires"). If leave to amend would be futile, however, the court may deny leave. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile.").

Here, the Court finds that leave to amend would be futile. Similar to the plaintiffs in

---

[2] The Court also finds that Riffel lacks standing to seek injunctive relief for the separate and independent reason that she has not alleged any future harm to herself that an injunction would redress. "To have Article III standing to seek injunctive relief in a federal court, a plaintiff must demonstrate 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1247-48 (N.D. Cal. 2017). Because the underlying basis for her alleged "harm"—the college admissions scandal—has ceased, Riffel is not able to show there is a sufficient likelihood that she would be wronged in a similar way. *See* RJN, Ex. C.

[3] Riffel asserts a claim under California's Unfair Competition Law ("UCL"). But to have standing under California's UCL, a plaintiff must establish in part that they (1) suffered an injury-in-fact and (2) lost money or property as a result of the unfair competition. *See Birdsong*, 590 F.3d at 959 (citations omitted). Because Riffel has not alleged the requisite injury-in-fact, the Court also concludes that she lacks standing to bring her California UCL claim.

Case No.: 5:19-cv-08466-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

8

*Tamboura* and *Bendis*, Riffel would have to show some connection between the college admissions scandal and her admissions review. For the reasons discussed above and in *Tamboura*, the Court does not believe that Riffel will be able to plead facts connecting the scheme to defraud to USC's general admissions process. Accordingly, the Court determines that amendment would be futile.

## VI. CONCLUSION

For the foregoing reasons, USC's motion to dismiss is **GRANTED** on jurisdictional grounds without leave to amend.

**IT IS SO ORDERED.**

Dated: August 17, 2021

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:19-cv-08466-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR LACK OF STANDING

9